IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jimmie Moody, (K58880), ) | |
| ) | |
| Petitioner, ) | |
| ) | 13 C 4119 |
| v. ) | |
| ) | Judge John Z. Lee |
| ) | |
| Rick Harrington, Warden, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Jimmie Moody, a prisoner at the Menard Correctional Center, brings this *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging his 2007 murder conviction in the Circuit Court of Cook County. Moody asserts the following claims: (1) insufficient evidence to support his conviction; (2) ineffective assistance of trial counsel for failing to investigate a witness; (3) ineffective assistance of trial counsel for failing to object to the prosecutor's improper closing arguments; (4) ineffective assistance of appellate counsel for failing to raise trial counsel's alleged failure to investigate a witness; and (5) prosecutorial misconduct during closing arguments. The Court denies the petition.

A.  **Background**

   1.  **Factual History**

Tthe following facts are drawn from the state court record. The factual findings by the state court are presumed to be correct, unless Moody is able to present clear and convincing evidence to rebut the presumption of correctness. *See Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007) (citing 28 U.S.C. § 2254(e)(1)); *see also McManus v. Neal*, 779 F.3d 634, 649 (7th Cir.

2015). Here, Moody has not satisfied that burden, and the state court's factual findings are presumed to be accurate.

Moody and his friend, Demetrius Smiter, were drug dealers. ECF No. 15-4 at 2. Despite being friends, however, they were rival gang members. Moody was a Black Stone, while Smiter was a Gangster Disciple. *Id.* They both sold drugs on the corner of 78th and Paulina Streets in the Auburn Gresham neighborhood of Chicago's South Side. *Id.* Although the Gangster Disciples controlled the corner, Moody was permitted to sell drugs there so long as he was working with Smiter. *Id.*

In February or March 2001, Moody told Smiter that he was angry because some of the Gangster Disciples, including an individual by the name of Latrell Davis, were limiting his ability to sell drugs on the corner. *Id.* Moody said he wanted to kill the Gangster Disciples one by one, and he showed Smiter a black .380 semiautomatic handgun. *Id.*

On March 30, 2001, the day of the murder, Smiter had arranged to sell drugs with Davis on the corner. At approximately 7:45 a.m., Smiter met Moody at a building located at 1651 West 78th Street, on the corner of 78th and Paulina. *Id.* Moody then instructed Smiter to approach Davis and lure him to Moody by telling him that there was a person on the first floor of the building who wanted to buy drugs. *Id.* Moody had his handgun with him.

Smiter agreed and did what Moody had told him to do. *Id.* As Davis went into the building at Smiter's instruction, Smiter remained on the corner with two other Gangster Disciples, Delvodtis Golden and Isaac Stewart. *Id.* at 2–3. Then Smiter heard five or six gunshots and saw Moody running from the building. *Id.* at 3. Smiter fled as well. *Id.* And, while fleeing from the scene, Moody told Smiter that Moody had shot Davis. *Id.*

Moody and Smiter ran to a nearby apartment building at 1640 West 77th Street where Moody lived. *Id.* Moody went into his apartment, while Smiter knocked on the door of his friend's apartment, Wesley May, who also happened to live in the building. *Id.* Smiter told May that Moody had murdered Davis. *Id.* Moody came downstairs with his three children, and Smiter asked May whether May could drive the group to Smiter's home at 7013 South Bishop Street. *Id.*

Once they arrived as his house, Smiter asked his younger sister, Haquesha Williams, to watch Moody's children. *Id.* Smiter suggested to Moody that he should hide the gun in Smiter's home. *Id.* Smiter then showed Moody a door that opened to a small area in the house. *Id.* Moody wiped the gun with a nearby drape and placed it inside the area. *Id.* At this time, May asked Moody what he had done, and Moody responded that he had shot Davis. *Id.* Moody then asked Smiter to return to Moody's home to retrieve some clothes for him. *Id.*

While Smiter was at Moody's house, the police stopped by. *Id.* Smiter provided the police with a false name, but the police arrested him because, they claimed, he was wearing a hat that matched a description provided by witnesses to the shooting. *Id.* at 3–4. Although Smiter gave a false statement to the police at first, he eventually confessed. *Id.* at 4. Smiter subsequently was charged with Davis's murder, but he pleaded guilty to a lesser charge of aggravated battery with a firearm, in exchange for a recommended sentence of fourteen years of imprisonment. *Id.* at 1.

Moody also was eventually arrested and charged, and Smiter was called as a witness for the prosecution at Moody's trial. As part of his testimony, Smiter explained that he understood that, if he did not testify truthfully, he would be charged with first degree murder and his plea agreement

3

would be void. *Id.* Smiter admitted that he also had agreed to ensure his mother's and sister's cooperation in the prosecution's case against Moody. *Id.* at 1–2.

In addition to hearing about Smiter's plea agreement, the jury also heard that Smiter had originally told the police that he was with his girlfriend at the time of the shooting. *Id.* at 4. The jury was also made aware that, before Smiter had implicated Moody, Smiter had initially lied to the police by telling them that a light-skinned man was responsible for the shooting. *Id.*

May also testified at Moody's trial. May's testimony was consistent with Smiter's. May explained that, on the day of the murder, Moody had acted in a rushed and hurried manner when he arrived at May's apartment and had asked May for a ride to Smiter's home. *Id.* at 4. May recounted that Moody had boasted to him that he had just murdered someone and had shown him the murder weapon. *Id.* at 5. According to May, the gun appeared to have been fired because the slide was locked back, which suggested that all the bullets had been shot out of the gun. *Id.* May added that he saw Moody wipe the gun down and hide it in Smiter's home. *Id.* May also explained to the jury that he had been taken to the police station and held and treated like a suspect for three days. *Id.* He conceded that he initially had lied to the police about the events in question, but he eventually had provided an honest statement to the police. *Id.*

Isaac Stewart and Delvodtis Golden also testified on behalf of the prosecution. Stewart witnessed Moody and Smiter standing in front of 1651 West 78th Street before the shooting. *Id.* Both Stewart and Golden testified that Smiter approached Davis and told him that he should go into the building because someone wanted to buy drugs from him. *Id.* at 5–6. Stewart further testified that, after the shooting, he witnessed Moody leave the building and flee the area with Smiter. *Id.* at 5.

4

Haquesha Williams also testified at the trial, stating that Moody and Smiter had arrived at her house with Moody's children approximately forty-five minutes after the shooting. *Id.* at 6. Moody asked her for bleach, and then he went into the bathroom and washed his hands with it. *Id.* Defense counsel attempted to impeach Williams with her testimony that she was aware of Smiter's plea agreement. *Id.* Defense counsel also attempted to impeach Williams regarding whether May was also with Smiter and Moody. *Id.*

In addition, Smiter's mother also was called as a witness during the trial. She testified that, on the day of the murder, she had called the home of her daughter, Haquesha, and after Haquesha answered, she handed the phone to Moody. *Id.* According to Smiter's mother, Moody told her about Davis's murder. *Id.* at 7.

The Chicago Police Officers who had arrested Smiter also testified at Moody's trial. *Id.* One of the officers testified that he had received information from witnesses at the scene of the murder that the suspect had been wearing a black and red baseball cap with a snakeskin bill. *Id.* The officer stated that Smiter was wearing a baseball cap that fit this description when he was arrested. *Id.* Another officer testified that eight .380 caliber cartridge casings and two fired bullets were recovered from the crime scene. *Id.* The officer stated that, although officers had subjected Smiter to a gunshot residue test on the morning of the shooting, the test results showed that Smiter had not recently fired a gun. *Id.*

### 2. Procedural History

At the conclusion of the trial, the jury found Moody guilty of first degree murder, and the judge sentenced him to seventy years of imprisonment. *Id.* at 1, 7. Moody argued on direct appeal before the Illinois appellate court that the state had failed to prove him guilty beyond a

reasonable doubt and that his conviction should be vacated under Illinois's One Act One Crime Doctrine. ECF No. 15-1. The appellate court rejected the arguments and affirmed the conviction and sentence. *Illinois v. Moody*, No. 1-07-3302 (Ill. App. Ct. Dec. 9, 2009). ECF No. 15-4. Moody raised the same argument in his petition for leave to appeal (PLA) in the Illinois Supreme Court, ECF No. 15-5, which was denied. *Illinois v. Moody*, No. 109831, 236 Ill.2d 530 (Mar. 24, 2010) (table), ECF No. 15-6. The Illinois Supreme Court then denied his petition for a writ of certiorari, ending Moody's direct appeal. *Moody v. Illinois*, No. 09-11432, 131 S. Ct. 197 (Oct. 4, 2010) (Mem.); ECF No. 15-7.

In March 2011, Moody filed a postconviction petition under Illinois's Post Conviction Hearing Act, 725 Ill. Comp. Stat. 5/122-1, *et seq.* ECF No. 15-13 at 34. In it, Moody claimed that he had suffered from ineffective assistance of counsel based upon the attorney's failure to: (a) call Brenda Johnson and Elaine Snair as material witnesses; (b) communicate with Moody prior to trial; and (c) object to the prosecution's misstatement of law during closing arguments. Moody also claimed prosecutorial misconduct during closing argument and ineffective assistance of appellate counsel for failing to raise these issues and misquoting a witness in Moody's direct appeal brief and PLA. ECF No. 15-13 at 62. The Illinois trial court denied the postconviction petition on the merits. *Id.* at 62–68.

Moody then appealed the denial of his postconviction petition to the Illinois appellate court. His appointed counsel moved for, and was granted, leave to withdraw from the appeal pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). ECF No. 15-8; ECF No. 15-10. Moody then brought a PLA before the Illinois Supreme Court, and that too was denied, which

concluded his state court proceedings. ECF No. 15-11; ECF No. 15-12. He now brings this habeas corpus petition under 28 U.S.C. § 2254. ECF No. 1.

**B.     Petitioner's Claims**

    **1.     Respondent's Procedural Default Argument**

As a preliminary matter, Respondent argues that Moody's claim alleging ineffective assistance of trial counsel for failing to call Brenda Johnson as a witness is procedurally defaulted. Illinois law requires that a claim that trial counsel was ineffective for failing to investigate or call a witness be supported by an affidavit from the proposed witness. 725 Ill. Comp. Stat. 5/122-2; *Illinois v. Enis*, 743 N.E.2d 1, 13 (Ill. 2000). Without the affidavit, a court is not required to consider the claim because it cannot evaluate how the potential witness would have testified. *Enis*, 743 N.E.2d at 13.

When a state court refuses to adjudicate a claim on the merits due to the prisoner's failure to follow a state procedural rule, this qualifies as an independent and adequate state ground for its decision, resulting in procedural default of the claim in a habeas corpus proceeding. *Trevino v. Thaler*, 133 S. Ct. 1911, 1917 (2013). A prisoner's failure to provide an affidavit as required by Illinois law can result in this type of procedural default. *Thompkins v. Pfister*, 698 F.3d 976, 986–87 (7th Cir. 2012) (finding default for failure to provide required witness affidavit when alleging ineffective assistance of counsel for failure to investigate potential witnesses).

Because the Illinois Supreme Court summarily denied Moody's PLA, the last state court with an opportunity to address the issue was the Illinois appellate court during Moody's postconviction proceedings. In granting appellate counsel's *Finley*[1] motion to withdraw as

---

[1]     *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (holding that there is no constitutional right to representation in collateral postconviction proceedings).

appointed counsel, the Illinois appellate court made no mention of the affidavit issue. ECF No. 15-10 at 2. In arriving at its ruling, the court explained that it had reviewed counsel's *Finley* motion, Moody's response, and the record as a whole, and concluded there were "no issues of arguable merit on appeal." *Id.* The court then granted the *Finley* motion and affirmed the trial court's denial of the postconviction petition. *Id.*

Because the appellate court adjudicated the appeal pursuant to a *Finley* motion, the Court must look to the "nature of the disposition" and the "surrounding circumstances" to determine whether the state court relied on an independent and adequate state law ground in disposing of the claim. *Yist v. Nunnemaker*, 501 U.S. 797, 802 (1991); *Woods v. Schwartz*, 589 F.3d 368, 375 (7th Cir. 2009). Although the trial court's opinion mentioned that Moody had not include the required affidavit (as did the *Finley* motion), ECF Nos. 15-8 at 14, 15, 15-13 at 65, the court raised the issue only after a full discussion of the claim on the merits and, then, only to illustrate how the failure prevented Moody from satisfying his obligation to provide support for his arguments. ECF No. 15-13 at 65. At most, Moody's failure to provide the necessary affidavit was interwoven with the underlying merits of Moody's claim and, thus, is insufficient to establish a clear and express reliance on a state procedural bar. *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Sanders v. Cotton*, 398 F.3d 572, 579 (7th Cir. 2005).

Although the trial court clearly rejected Moody's claim on the merits, whether the appellate court's ruling was based on procedural grounds is not exactly clear. However, as a general matter, when a lower state court bases its ruling on a particular line of reasoning and the appellate court affirms the judgment without a ruling, the presumption is that the affirming court did so based on the same grounds articulated by the trial court. *Yist*, 501 U.S. at 802.

8

Accordingly, here, the appellate court must be deemed to have rejected the merits of Moody's claim. Indeed, there is nothing in the record to suggest that the state appellate court refused to adjudicate the claim on the merits, and the parties have not presented any support to overcome this presumption.[2] Consequently, the Court concludes that there is no procedural default here.

Nevertheless, Respondent argues that *Woods v. Schwartz*, 589 F.3d 368, in which the Seventh Circuit found procedural default resulting from a *Finley* decision, should control this case. However, in that case, the state court's ruling, the *Finley* motion, and the record as a whole all supported the theory that the state court's decision was based on procedural grounds. *Id.* at 375-77. Additionally, the opinion and *Finley* motion made no reference to the merits, and the procedural posture of the case indicated that procedural default was the only permissible ground for the state court ruling. In contrast, here, the nature of disposition and surrounding circumstance all suggest that the state court did not based its decision on Moody's procedural failings. Respondent's procedural default argument as to Moody's claim for ineffective assistance of counsel is rejected.

---

[2] Moody conceded that he did not attach an affidavit regarding Brenda Johnson's testimony. ECF No. 15-9 at 4; ECF No. 17 at 1. However, he countered that his postconviction petition included relevant copies of the trial court record and this is sufficient to meet the procedural requirement. ECF No. 17 at 1. The Illinois Post Conviction Hearing Act, which states that a "petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached," 725 Ill. Comp. Stat. 5/122-2, lends credence to Moody's view that he is not required to submit an affidavit if he can provide other acceptable forms of evidence or explanation. *See People v. Johnson*, 879 N.E.2d 977, 981 (Ill. App. Ct. 2007) (rejecting argument that postconviction petition was denied for failing to have required affidavit when petition was properly supported by other evidence including citations to the direct appeal record). Despite this, the Supreme Court of Illinois holds that an affidavit is necessary for an ineffective assistance of counsel claim regarding the failure to investigate or call a witness at trial. *Enis*, 743 N.E.2d at 13; *Illinois v. Johnson*, 700 N.E.2d 996, 1004 (Ill. 1998). The Court need not resolve the issue of whether Moody's submission was sufficient under Illinois law despite lacking an affidavit because, as discussed above, Respondent has failed to establish that the state appellate court refused to adjudicate the claim on the merits due to Moody's failure to follow a state procedural rule.

### 2. The Merits of Moody's Claims

#### a. The AEDPA Standard

A writ of habeas corpus will be granted only if Moody demonstrates that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the Court may not grant habeas relief unless the state court's decision on the merits was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or the state court decision was based on an unreasonable determination of facts. 28 U.S.C. § 2254(d).

"A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "An 'unreasonable application' occurs when a state court 'identifies the correct legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of petitioner's case.'" *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)).

Clearly established federal law is the "'holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). The state court is not required to cite to, or even be aware of, the controlling Supreme Court standard, as long as the state court does not contradict the Supreme Court standard. *Early v. Packer*, 537 U.S. 3, 8 (2002).

State courts are presumed to both know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). This presumption is especially strong when the state court is considering well-established legal principles that have been routinely applied in criminal cases for many years. *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).

In making this determination, the Court's analysis is "backward looking" and is limited to reviewing the record before the state court at the time that the court made its decision. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). Similarly, the Court must only consider the Supreme Court's "precedents as of 'the time the state court renders its decision.'" *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011) (quoting *Cullen*, 131 S. Ct. at 1399; *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003)) (emphasis omitted).

"AEDPA's standard is intentionally 'difficult to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014); *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013)). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This "highly deferential standard . . . demands that state-court decisions be given the benefit of the doubt." *Woodford*, 537 U.S. at 24. *See Harrington*, 131 S. Ct. at 102–03 (habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal") (quotation marks omitted). "Under § 2254, a habeas court must determine what arguments or theories supported, or . . . could have supported, the state court's decision; and then it must ask

whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court." *Id.* at 102.

### b. Claim One: Moody's Sufficiency-of-the-Evidence Claim

Moody's sufficiency-of-the-evidence claim reargues the merits of his case. He argues that Smiter's testimony was hopelessly unreliable because he had entered into a plea agreement, whereby he received a recommendation for lesser sentence in exchange for testimony. Moody also argues that the testimony of the other witnesses, who were all Smiter's friends, family, and fellow gang members, should be rejected because they were biased in Smiter's favor. Moody further points out that the police originally targeted Smiter as the primary suspect for the shooting, and they focused on Moody only after Smiter confessed to his involvement. Moody also provides several examples where the prosecution's witnesses were impeached by prior statements or other facts in the case.

When deciding a sufficiency-of-the-evidence claim, the Court applies a "twice-deferential standard." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam). First, the Court must be deferential to the verdict. "'[I]t is the responsibility of the [finder of fact] to decide what conclusions should be drawn from evidence admitted at trial.'" *Parker*, 132 S. Ct. at 2152 (quoting *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam)). With this in mind, "[t]he evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). Additionally, the Court must accord a second level of deference under § 2254(d) of the AEDPA. *Parker*, 132 S. Ct. at 2152 (citing *Cavazos*, 132 S. Ct. at 4).

Here, the Court focuses on the decision issued by the appellate court on direct appeal, ECF No. 15-4, because it was the last state court to address Moody's sufficiency-of-the-evidence claim on the merits. *See McGhee v. Dittmann*, 794 F.3d 761, 769 (7th Cir. 2015).

As an initial matter, the appellate court's decision was not contrary to controlling Supreme Court precedent. The state court properly identified the controlling standard, noting that it must view the evidence in the light most favorable to the prosecution and decide whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. ECF No. 15-4 at 8. The fact that the state appellate court cited to an Illinois, rather than a federal, case for the controlling law is of no moment because the state court correctly articulated the standard announced by the Supreme Court. *Compare* ECF No. 15-4 at 8, *with Musacchio v. United States*, 136 S. Ct. 709, 711 (2016); *Jackson*, 443 U.S. at 319.

Second, the state court's application of this standard was not unreasonable. The evidence at trial showed that Moody had asked Smiter to lure Davis into the building, where Moody planned to murder Davis. ECF No. 15-4 at 8. Moody and Smiter fled the scene. *Id.* Witnesses saw Moody fleeing from the scene immediately after the shooting. *Id.* The police recovered shell casings and bullets from the scene that matched the caliber of Moody's gun. *Id.* Moody and Smiter convinced May to drive them to Smiter's home, and Moody told May that he just shot someone multiple times. While at Smiter's home, Moody washed his hands with bleach, wiped the gun with a curtain to remove his fingerprints, and hid the gun in the home. *Id.* In short, the evidence presented at trial strongly suggested that Moody had murdered Davis and then tried to conceal incriminating evidence. *Id.*

As the state appellate court properly noted, Moody's challenge focuses almost exclusively on the credibility of the prosecution's witnesses. *Id.* But it is not up to a reviewing court to weigh the credibility of witnesses. Moody's arguments were presented to, and rejected by, the jury, and, thus, Moody's attempt to reargue the credibility of the witnesses is improper. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (instructing that a federal habeas corpus court has no license to reexamine credibility determinations).

Additionally, it should be noted that a gun residue test showed that Smiter had not fired a gun on the day of the shootings. ECF No. 15-4 at 7. Moody suggests that Smiter could have been the murderer and challenges Smiter's credibility and the credibility of the other witnesses suggesting they are testifying to help Smiter. Yet, the lack of gun residue also supports the proposition that Smiter could not have been the shooter.

In sum, there is sufficient evidence to support the conviction. Therefore, the state court determination rejecting his sufficiency-of-the-evidence claim is neither contrary to, nor an unreasonable application of, clearly established federal law.

    c.  **Claims Two and Four: Ineffective Assistance as to Brenda Johnson**

Moody next argues that his trial counsel was ineffective for failing to investigate Brenda Johnson, and his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on appeal. Following his conviction, Moody filed a pro se motion arguing that the failure to call Brenda Johnson as a witness required an acquittal or a new trial. ECF No. 15-14 at 138.

Johnson lived in the basement apartment at 1649 West 78th Street, the building next door to 1651 West 78th Street, where the murder occurred. ECF No. 15-15 at 362. She was

interviewed by the police following the shooting, and her statement was in the police report that was disclosed to the defense. *Id.*[3]

According to the report, Davis was in a friend's apartment at 1651 West 78th Street just before the murder occurred. *Id.* at 362–63. A group of unknown males told Davis that a lady named Johnson wanted to see him on the first floor. *Id.* Davis went to Johnson's basement apartment next door asking if anyone was looking for him. *Id.* When Johnson responded in the negative, Davis left. *Id.*

After Davis left, Johnson heard six gunshots. *Id.* Afterwards, Johnson saw two black males, one walking down the east alley of Paulina toward 77th Street and the other walking westbound down 78th and then northbound on Paulina. *Id.* at 363–64. Johnson never identified the two men she saw walking after the shooting, and there is no indication that these men had any connection to the case. *Id.*

During the hearing on Moody's post-trial motion, Moody's trial counsel explained that there was a separate report that had stated that the unknown men had knocked on the door of Ms. Johnson's apartment, rather than Ms. Mack's. *Id.* at 364–65. That report, defense counsel believed, incorrectly confused Ms. Johnson for Ms. Mack. *Id.* The report stated that the victim was with Ms. Johnson when the men knocked on the door (when Davis was actually with Ms. Mack at the time) and provided the wrong address. *Id.*

Defense counsel explained that there was no reason to pursue Ms. Johnson as a witness because the report had clearly confused Ms. Mack and Ms. Johnson. *Id.* at 15-15 at 366–67. The

---

[3] The police report is not in the record. Moody's trial counsel, whose performance is being challenged here, recounted the information in the police report during the hearing on Moody's post-trial motion. Moody does not challenge the information recounted by his defense counsel.

15

trial court agreed and denied Moody's ineffective-assistance-of-counsel argument. *Id.* The issue was not pursued on direct appeal.

Moody then renewed his ineffective-assistance-of-counsel argument (as well as an argument challenging the effectiveness of his appellate counsel) in his postconviction petition. As noted, the trial court denied the postconviction petition, ECF No. 15-13 at 62, and the appellate court granted counsel's *Finley* motion and then affirmed on the merits, ECF No. 15-10 at 2. As the state court adjudicated the claims on the merits, the claims are governed by the requirements of the AEDPA under 28 U.S.C. § 2254(d). *Wilkinson v. Cowan*, 231 F.3d 347, 352 (7th Cir. 2000).

An ineffective assistance of counsel claim is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate ineffective assistance of counsel, Moody must demonstrate both deficient performance and prejudice. *Premo v. Moore*, 562 U.S. 115, 121 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). The Court's review under *Strickland* is deferential and applying *Strickland* under the AEDPA (which itself also requires deference) results in a double level of deference to the state court determination. *Knowles*, 556 U.S. at 123.

In this case, the Court need not decide whether the defense counsel's failure to present Johnson has a witness was deficient, because even if it were, Moody cannot demonstrate that he was prejudiced by Johnson's absence at trial. Most notably, Johnson's statements to the police do not indicate that she had witnessed the shooting. And, although she saw two men walking by her building after the shooting, there is nothing to suggest that she could identify the two men or that they had any involvement in the shooting.

Furthermore, Johnson's statements do not contradict the prosecution's theory of the case or undermine in any way the testimony of the witnesses who saw Moody flee from the scene

immediately after the shooting. The statements also do not contradict the testimony of other witnesses that Moody had admitted to committing the murder, washed his hands with bleach to erase evidence of his actions when he arrived at Smiter's house, and hid a gun at the house after the shooting. Nor do they change the fact that the police recovered shells and bullets from the crime scene that were the same caliber as Moody's gun. In sum, there is nothing to suggest that Ms. Johnson's testimony would have resulted in a reasonable probability that the outcome of the trial would have been different, and Moody cannot meet the demanding standard under the AEDPA. *See Thompkins*, 698 F.3d at 988 (rejecting *Strickland* claim under AEDPA standard when potential witness does not contradict prosecution's case).

Finally, Moody's argument that he was rendered ineffective assistance by his appellate counsel also is unpersuasive. Appellate counsel cannot be faulted for failing to raise losing issues on appeal. *Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001).

### d. Claims Three and Five: Improper Argument by Prosecutor During Closing Arguments

Finally, Moody argues that the prosecutor made improper comments during closing arguments and that his trial counsel was ineffective for failing to object to the comments. This argument was presented on postconviction review and thus is governed by the AEDPA.

In order to succeed, Moody must demonstrate that the challenged comment was improper and prejudicial. *United States v. Harper*, 662 F.3d 958, 962 (7th Cir. 2011). An improper comment violates the constitution when it so infects the trial with unfairness as to make the resulting conviction violate due process. *Parker*, 132 S. Ct. at 2153.

During closing argument at Moody's trial, the prosecution said, "The law tells you he [Moody] is guilty of first-degree murder." ECF No. 15-15 at 267. The prosecutor made the

17

statement as the prosecutor was transitioning from a summary of the evidence to a discussion about the jury instruction. Considered in context, the Court concludes that the prosecutor's arguments did not appeal to facts or emotions outside the case, were based on the evidence presented at trial, and were proper. Furthermore, to the extent that they raised any concern, they were satisfactorily cured by the jury instructions, to which Moody had raised no objection. *United States v. Miller*, 276 F.3d 370, 375 (7th Cir. 2002). And, because the prosecutor's comments did not raise a constitutional violation, the failure of Moody's appellate counsel to raise it during appeal also was not constitutionally deficient. *Whitehead*, 263 F.3d at 731.

For the reasons set forth above, the Court denies all of Moody's claims in support of his habeas petition, and this case is dismissed on the merits.

C. **Certificate of Appealability**

The Court declines to issue a certificate of appealability under Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts. Moody cannot make a substantial showing of the denial of a constitutional right, or that reasonable jurists would debate, much less disagree, with this Court's resolution of this case. *Resendez v. Knight*, 653 F.3d 445, 446–47 (7th Cir. 2011) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Moody is advised that this is a final decision ending his case in this Court. If Moody wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Moody need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Moody wishes the Court to reconsider its judgment, he may file a motion under Fed. R. Civ. P. 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to

file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

**D.    Conclusion**

Moody's habeas corpus petition [1] is denied on the merits. Any pending motions are denied as moot. The Court declines to issue a certificate of appealability. On the Court's own motion, Respondent Rick Harrington is terminated. Kim Butler, Warden, Menard Correctional Center, is added as Respondent. The Clerk of the Court shall also alter the case caption to *Moody v. Butler*. Civil case terminated.

**SO ORDERED**                                             **ENTERED    5/18/16**

*[signature: John Z. Lee]*

_____

**John Z. Lee**
**United States District Judge**